JUDGE BUCHWALD

Vano Haroutunian (VH    )
Ballon Stoll Bader & Nadler, P.C.
729 Seventh Avenue, 17th Floor
New York, New York 10019
Tel: 212-575-7900
*Attorneys for Plaintiff*
*Stevano Wear, Inc. d/b/a Stevano Wear Co.*

08 CIV 7542

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STEVANO WEAR, INC. d/b/a STEVANO WEAR CO.,
                Plaintiff,

      -against-

GENEVA FACTORS LTD.
             Defendant.
-------------------------------------------------------------------X

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Stevano Wear Co. ("Plaintiff" or "Stevano"), by its attorneys Ballon Stoll Bader & Nadler, P.C., brings this complaint against defendant Geneva Factors Ltd. ("Defendant" or "Geneva"), alleging upon information and belief as follows:

### PRELIMINARY STATEMENT

1.     This action is brought to recover monetary damages and for injunctive relief arising from Defendant's breach of a factoring agreement (the "Agreement") (attached as "**Exhibit A**") and unfair and deceptive business acts and practices in violation of **New York General Business Law § 349**. Defendant violated the terms and provisions of the Agreement and the General Business Law by unilaterally charging back the invoices of Stevano's customers and providing false reasons, or no reasons at all, for the unlawful charge backs.

### JURISDICTION AND VENUE

2.     Jurisdiction is proper pursuant to **28 U.S.C. 1332** because plaintiff is a New Jersey corporation headquartered in New Jersey, defendant is a New York corporation headquartered

1

in New York and the amount in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs.

3.    Venue is proper pursuant to **28 U.S.C. § 1391** because all defendants reside in this judicial district.

## THE PARTIES

4.    Stevano is a New Jersey corporation with corporate headquarters located at 599 Main Avenue, Passaic, New Jersey 07055. Plaintiff imports men's and boys' wholesale clothing and furnishings.

5.    Geneva is a New York corporation that maintains its corporate headquarters at 333 East 49th Street, Suite 9D, New York, New York 10017. Geneva provides factoring, credit assessment, accounting consultation and accounts receivable management services to fashion, service, IT, publishing, food and medical companies.

## FACTS

6.    On or about October 29, 2007, the parties entered into the Agreement, which stated the terms and provisions under which Defendant would act as the factor for Stevano.

7.    The Agreement was made in the State of New York and is governed, interpreted and construed in accordance with the State's laws.

8.    The Agreement was effective for one (1) year and was in force at all times relevant to this suit.

9.    Pursuant to the Agreement, Stevano, *inter alia*, sold and assigned to Defendant its accounts receivable and granted a security interest in its accounts and other collateral to Defendant.

2

10.    Prior to each sale for which Stevano wished Geneva to act as a factor, Stevano sought credit approval in writing.

11.    Defendant assumed credit risk for the customer's financial inability to pay on those receivables for which it had given credit approval in writing.

12.    Defendant was required to pay each net receivable in full excepting only its 1.5% factoring commission.

13.    Beginning in or about February 2008, defendant breached the Agreement in that it failed to accept responsibility for, and charged back to Stevano's factoring account, four (4) of Stevano's customer invoices which were unpaid solely due to the customers' financial inability to make payment therefore, to wit:

      (a)    an invoice to Real Design Bargain dated November 30, 2007 (annexed as "**Exhibit B**") in the amount of seventeen thousand, two hundred and twenty dollars ($17,220.00);

      (b)    an invoice to Roro Inc. dated February 12, 2008  (annexed as "**Exhibit C**") in the amount of forty-five thousand, three hundred and sixty dollars ($45,360.00);

      (c)    an invoice to Basha dated on March 4, 2008 (annexed as "**Exhibit D**") and the amount of thirty-eight thousand, six hundred and sixty-four dollars ($38,664.00); and

      (d)    an invoice to Tasse's Fashions dated on March 18, 2008 (annexed as "**Exhibit E**") in the amount of nineteen thousand, three hundred and fourteen dollars ($19,314.00);

3

14.    Defendant had given Stevano written credit approval for all of the abovementioned sales prior to Stevano's sales and deliveries under the subject invoices.

15.    Stevano sold goods to the abovementioned retailers in reliance on defendant's credit approval.

16.    Stevano's customers received and accepted all of the goods set forth in each of the four invoices set forth in Paragraph 13 above, which in all material respects conformed to the terms for which defendant had given its written credit approvals.  Each of said four invoices was not paid solely due to the customers' financial inability to make payment and there was no other reason for non-payment of any of said invoices.

17.    Under these circumstances, no event justified Defendant's charge backs. Defendant's proffered reasons for the charge backs were false and no dispute existed between plaintiff and its customers as to the charged back sales.

18.    On or about April 29, 2008, Stevano's counsel sent a letter to Defendant, formally demanding that Defendant honor the invoices it had approved and to credit Stevano's accounts in light of its customers' inability to pay.

19.    Defendant responded that it had evidence to justify each of its four charge backs, but defendant has not produced any such evidence despite repeated requests by plaintiff.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

20.    Plaintiff repeats and realleges all of its statements in Paragraphs 1 through 19 above as if fully stated hereat.

21.    Defendant's breach of the Agreement, both of its specific terms and of the covenant of good faith and fair dealing, has caused Stevano to suffer both direct and consequential damages and defendant is liable to Stevano therefor.

4

22.  Defendant's actions also make it likely that they will continue to breach the agreement, that plaintiff has no adequate remedy at law and that plaintiff is entitled to an injunction preventing defendant from wrongfully charging back its invoices in violation of the agreement.

### SECOND CLAIM FOR RELIEF
### (Unfair and Deceptive Business Acts and Practices)

23.  Plaintiff repeats and realleges all allegations contained in paragraphs 1 to 32.

24.  While the Agreement was in force, Defendant unlawfully charged back the invoices of four (4) of Stevano's customers without any reason.  Such unlawful act or practice was materially deceptive, misleading and injurious to Stevano, which acted reasonably under the circumstances.

25.  Defendant's unlawful behavior was willful and/or knowing.

26.  Stevano is entitled to a judgment directing Defendant to make restitution to Stevano of any monies or property obtained directly or indirectly from Defendant's unlawful charging back of invoices, to triple damages in an amount allowed by statute, attorneys' fees in this action as allowed by statute and to an injunction enjoining Defendant from engaging in such unlawful deceptive business act or practice in violation of New York General Business Law § 349.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests judgment for the following relief:

On the First Cause of Action:

(a)  granting an injunction to prevent Defendant from unilaterally charging back any invoices of Stevano's customers absent a valid reason in violation of the Agreement;

5

(b)    awarding compensatory damages in the sum of $ 120,558, or such greater sum as shall be found to have been caused by Defendant's breach of the Agreement;

(c)    awarding costs and disbursements, including attorney's fees, court costs and expenses; and

(d)    granting such other and further relief as this Court deems just and proper.

On the Second Cause of Action:

(a)    awarding actual damages found to have been caused by Defendant's unfair business act or practice or the statutory minimum of fifty dollars ($50.00), whichever is greater;

(b)    awarding triple damages for damages caused by Defendant's willful or knowing violation of New York General Business Law § 349, in the maximum amount allowed by statute;

(c)    awarding reasonable attorney's fees; and

(d)    granting costs, fees and such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 26, 2008

BALLON STOLL BADER & NADLER, P.C.

By: _____
Vano I. Haroutunian (VH 1910)
*Attorneys for Plaintiff*
729 Seventh Avenue, 17th Floor
New York, New York, 10019
(212) 575-7900

# EXHIBIT A

Gentlemen:

Upon your written acceptance, to be noted at the foot of this Agreement, the following will state the terms and conditions under which you are to act as our partial factor:

1. **APPOINTMENT AND SALE OF ACCOUNTS:**

(a) We hereby appoint you our factor, and hereby sell and assign to you, making you absolute owner thereof, all of our accounts, contract rights, notes, bills, acceptances and all other obligations to us (hereinafter referred to as "Receivables") for the payment of money, in cash or in kind, together with all proceeds thereof, all security and guarantees therefor, and all of our rights to the goods and property represented thereby. You shall have all the rights of an unpaid seller or provider of the goods or services, the sale or rendering of which gives rise to each Receivable, including the rights of stoppage in transit, reclamation and replevin. Upon each sale of goods or entering of services, we shall execute and deliver to you such confirmatory assignments of our Receivables as you may require, in form and manner satisfactory to you, together with copies of invoices, all shipping or delivery receipts, and such other proof of sale and delivery or performance as you may, at any time or from time to time, require to effect collection of our Receivables. We shall make appropriate notations upon our books and records indicating the sale and assignment of our Receivables to you. All invoices or other statements to our customers concerning Receivables shall clearly state, in language satisfactory to you, that each such Receivable has been sold and assigned to you and/or the Re-Factor and is payable to you and/or the Re-Factor only. Copies of Receivables sold and assigned to you shall also bear this language. During the term of this Agreement, we agree not to sell, negotiate, pledge, assign or grant any security interest in any or all of our Receivables to anyone other than you. If we are or become engaged in finishing or improving goods, we agree, notwithstanding any credit approval you may have given on the customer(s) involved, to assert promptly, at our expense and upon your demand, any lien rights provided by law on goods in our possession. We will remit to you the proceeds of sale of such goods to satisfy the amounts owed to you by the owner of the goods. It is understood that your credit approval is limited to the net amount of the customer's obligation after the sale and disposition of such goods.

(b) We represent to you that the following are trade names or styles of ours, that any Receivables created in such names are in all respects subject to this agreement and that no other person or entity has an interest in and such Receivables:

2. **CREDIT RISK:** You will assume the credit risk only on Receivables for which you have given credit approval in writing ("Credit Approvals"). In the absence of such written Credit Approval from you, the Receivable is at our risk. If we ship merchandise or provide services based on a verbal approval, we acknowledge our responsibility to ensure that such approval is received by us in writing in a timely manner. We acknowledge that Credit Approvals may be withdrawn, either orally or in writing, in your discretion at any time if, in your opinion, a customer's credit standing becomes impaired before actual delivery of merchandise or rendering of services. Credit Approvals shall be limited to the specific terms and amounts indicated, and, notwithstanding any information subsequently provided to us by you, such credit approvals are automatically rescinded and withdrawn if the terms of sale vary from the terms approved by you, or if the terms of sale are changed by us without your written Credit Approval on the new terms, or if the Receivable is not assigned to you promptly (within five days) after creation. We further acknowledge that if we ship merchandise or provide services to a customer who has outstanding Receivables from us, and such customer's credit line and/or outstanding Credit Approvals have been withdrawn by you, and the Receivables created thereby, whether or not they are sold and assigned to you, exceed ten percent (10%) of the amount outstanding on your books, that any credit approvals applying to those Receivables outstanding on your books are cancelled and all outstanding Receivables from that customer are at our risk. If a customer, after receiving and accepting delivery of goods or services (subject to all warranties herein) for which you have given written Credit Approval, fails to pay a Receivable when due, solely to financial inability to pay, you shall bear any loss thereon. If nonpayment is due to any other reason, however, you shall not be responsible. Specifically, you shall not be responsible for any nonpayment of a Receivable: (a) because of the assertion of any claim or dispute by a customer for any reason whatsoever, including, without

Initials ___ Initials ___    2
Created on 10/29/07

limitation, disputes as to price, terms of sale, delivery, quantity, quality, or other, or the exercise of any counterclaim or offset (whether or not such claim, counterclaim or offset relates to the specific Receivable); (b) where nonpayment is a consequence of enemy attack, civil commotion, strikes, lockouts, the act or restraint of public authorities, acts of God or force majeure; or (c) if any representation or warranty made by us to you in respect of such Receivable has been breached. The assertion of a dispute by a customer shall have the effect of negating any Credit Approval on the affected Receivable(s) and such Receivable(s) shall be at our risk until paid or otherwise cleared from your books. With regard to sales without Credit Approval or in excess of any Credit Approval as to any given customer, we agree that any payments or credits applying to any Receivables owing by such customer will be applied: first, to any Credit-Approved Receivables outstanding on your books; second, to any Client Risk Receivables outstanding on your books and, third, to any Receivables outstanding on our books. This order of payment applies regardless of the respective dates the sales occurred and regardless of any notations on payment items. If you fail to collect a Receivable for which you have given Credit Approval within 120 days of its maturity, and your failure to collect such Receivable is due solely to the customer's financial inability to pay, you shall pay to us the net amount of such Receivable then owing on the Wednesday next following the week during which said 120 days expired. Any Receivable for freight, samples, or miscellaneous sales (including, without limitation, the sale of merchandise and/or in quantities not regularly sold by us) is always assigned to you at our risk, notwithstanding any written credit approval from you. You shall have no liability of any kind for declining or refusing to give, or for withdrawing, revoking, or modifying, any Credit Approval pursuant to the terms of this Agreement, or for exercising or failing to exercise any rights or remedies you may have under this Agreement or otherwise. In the event you decline to give your Credit Approval on any order received by us from a customer, and in advising us of such decline you furnish us with information as to the credit standing of the customer, such information shall be deemed to have been requested of you by us and your advice containing such information is recognized as a privileged communication. We agree that such information shall not be given to our customer or to our salesman. If necessary, we shall merely advise our customer that credit has been declined on the account and that any questions should be directed to you.

3: **CLIENT RISK. CLIENT RISK RECEIVABLES:** Any sale of goods or rendering of services by us for which we have not received written Credit Approval, or for which Credit Approval has been withdrawn or revoked, shall be known as a "Client Risk Receivable." Any Client Risk Receivable(s) assigned to and purchased by you are with recourse to us and at our sole credit risk. You shall have the right to charge back to our account the amount of such Client Risk Receivable(s) at any time and from time to time, either before or after maturity. We agree to pay you on demand the full amount thereof, and, failing to do so, we agree to pay all expenses incurred by you up to the date of such payment in attempting to collect or enforce payment of such Receivable(s). However, in no event shall you have any credit risk on the first $100.00 of any Receivable, notwithstanding the fact that such Receivable has been credit approved by you. For purposes of determining your credit risk hereunder, the Receivable balance due you from any given customer shall be calculated as the aggregate amount owed by that customer less any credits to which such customer may be entitled, and is not to be construed to mean individual invoices owed by that customer.

4: **PURCHASE PRICE.**

(a) The purchase price you shall pay to us for each Receivable shall equal the Net Invoice Amount thereof less your factoring commission, as specified below. As used herein, the term "Net Invoice Amount" means the gross invoice amount of the Receivable, less returns (whenever made), all selling discounts (at your option calculated on shortest terms) made available or extended to our customer, whether taken or not, and credits or deductions of any kind allowed or granted to or taken by the customer at any time. Unless specifically shown on the invoice sold and assigned to you, no discount, credit, allowance, or deduction with respect to any Receivable shall be granted, or approved, by us to any customer without your prior written consent.

Initials _____ Initials_____    3
Created on 10/29/07

(b) The purchase price (as computed above), less (i) any reasonable reserves or credit balance that you, in your sole discretion, determine to hold, (ii) moneys remitted, paid, or otherwise advanced by you to us or for our account (including any amounts which you may be obligated to pay in the future), and (iii) any other charges to our account provided for by this Agreement, shall be payable by you to us on a weekly basis on the Wednesday next following the week of collection. Monies shall be deemed to have been collected on the date of receipt thereof by you plus Seven (7) business days for clearing.

(c) You shall be entitled to withhold a reserve of sums otherwise due us, and may revise the amount of such reserve at any time and from time to time if you deem it necessary to do so in order to protect your interests. Furthermore, at your request, we shall maintain a credit balance ("credit balance" or "reserve" shall be defined for purposes of this subparagraph 4(c) as credit for amounts due us and not a "cash balance") with you in such amount as you determine to be commensurate with the volume and character of the business conducted by us and sufficient to protect you against all possible returns, claims of our customers, indebtedness owing by us to you, or any other contingencies. We shall pay you any debit balance in our account on demand.

(c) Interest upon the daily net balance of any moneys remitted, paid, advanced or otherwise charged to us or for our account before the payment, and interest applicable to the charges or to the expenses referred to in this Agreement, shall be charged to our reserve account as of the last day of each month at a rate per annum of four percent (4.0%) above the Prime Rate. The Prime Rate shall mean, at any time, the rate of interest quoted in the Wall Street Journal, Money Rates Section as the "Prime Rate" (currently defined as the base rate on corporate loans posted by at least 75% of the nation's thirty (30) largest banks). In the event that the Wall Street Journal quotes more than one rate, or a range of rates as the Prime Rate, then the Prime Rate shall mean the highest of the quoted rates. In the event that the Wall Street Journal ceases to publish a Prime Rate, then the Prime Rate shall be the average of the three largest U.S. money center commercial banks, as determined by Geneva Factors Ltd. If, during any month our reserve account or credit balance, subject to the terms and conditions of this Agreement, shall be in a net credit balance (i.e., the reserve or credit balance exceeds outstanding Receivables), then you agree to credit our reserve account as of the last day of each month with interest at a rate equal to three percent (3%) below our Prime Rate. All such interest, whether charged or credited to our reserve account, shall be computed for the actual number of days elapsed on the basis of a year consisting of 360 days. Any adjustment in your interest rate, whether downward or upward, will become effective on the first day of the month following the month in which the prime rate of interest is reduced or increased. HOWEVER, in no event shall the rate of interest agreed to or charged to us hereunder exceed the maximum rate of interest permitted to be agreed to or charged to us under applicable law. IT IS THE INTENTION OF THE PARTIES HERETO NOT TO MAKE ANY AGREEMENT VIOLATIVE OF THE LAWS OF THE STATE OF NEW YORK OR THE UNITED STATES RELATING TO USURY. IN NO EVENT, THEREFORE, SHALL ANY INTEREST DUE HEREUNDER BE AT A RATE IN EXCESS OF THE HIGHEST LAWFUL RATE, i.e., IN NO EVENT SHALL YOU CHARGE OR SHALL WE BE REQUIRED TO PAY ANY INTEREST THAT, TOGETHER WITH ANY OTHER CHARGES HEREUNDER THAT MAY BE DEEMED TO BE IN THE NATURE OF INTEREST, HOWEVER COMPUTED, EXCEEDS THE MAXIMUM LAWFUL RATE OF INTEREST ALLOWABLE UNDER THE LAWS OF THE STATE OF FLORIDA AND/OR OF THE UNITED STATES. SHOULD ANY PROVISION OF THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN US BE CONSTRUED TO REQUIRE THE PAYMENT OF INTEREST THAT EXCEEDS SUCH MAXIMUM LAWFUL RATE, ANY SUCH EXCESS SHALL BE AND IS EXPRESSLY HEREBY WAIVED BY YOU. SHOULD ANY EXCESS INTEREST IN FACT BE PAID, SUCH EXCESS SHALL BE DEEMED TO BE A PAYMENT OF THE PRINCIPAL AMOUNT OF OUTSTANDING INDEBTEDNESS OWING BY US TO YOU AND SHALL BE APPLIED TO SUCH PRINCIPAL.

## 5: FACTORING COMMISSIONS.

(a)  For your services hereunder, we shall pay and you shall be entitled to receive a factoring commission equal to One and One half (1.50%) of the gross invoice amount of each Receivable, which commission shall be due and payable to you on the date such Receivable arises.  Factoring commissions shall be chargeable to our account with you.  You shall be entitled to receive a surcharge equal to a minimum of one percent (1%) of the gross Invoice Amount of all Receivables arising out of our sales to Debtors-in-Possession.  The minimum factoring commission on each invoice or credit memo shall be $6.00.

(b)  Your commission, specified in paragraph 5(a) above, is based upon our maximum selling terms of sixty (60) days, and no more extended terms or additional dating will be granted by us to any customer without your prior written approval.  If and when such extended terms or additional dating are given to our customers, your commission with respect to the Receivables represented thereby shall be increased by twenty-five percent (25%) for each 30 days, or portion thereof, of extended or additional dating.

(c)  The minimum aggregate factoring commissions payable under this Agreement for each contract year hereof shall be three thousand dollars ($6,000.00), which shall be payable at the rate of $500.00 per month.  To the extent of any deficiency (after giving effect to commissions payable under the foregoing subparagraphs), the difference between the minimum and the amount already charged shall be chargeable to our account with you.

6.  STATEMENT OF ACCOUNT:  Once each month you shall render a statement (Client Ledger) to us with respect to the Receivables purchased by you during the previous month, any advances made by you, collections received by you, and charges made to our account under this Agreement.  Our account shall be charged with all discounts (at your option, calculated on shortest terms) made available to customers on assigned Receivables, all returns, allowances, deductions and credits, and your reasonable expenses, including, without limitation, postage on invoices, bank wire fees, filing fees, UCC search and similar charges.  We will also be charged with interest at the rate specified in paragraph 5(c) above, with respect both to Receivables as to which a credit is issued after the payment date applicable thereto, and any Receivables collected or charged back after such credit, or to the date of collection or chargeback, as the case may be.  A discount, credit or allowance after issuance or granting may be claimed solely by the customer.  Each statement, report, or accounting rendered or issued by you to us shall be deemed accepted by us and shall be conclusive and binding upon us, unless within thirty (30) days after the date thereof we notify you to the contrary by registered or certified mail, setting forth with specificity the reasons why we believe such statement, report, or accounting is incorrect and what we believe to be the correct amount thereof.  Moreover, if we fail to receive a monthly statement, we shall likewise be obligated to notify you in the same manner as if we fail to accept the statement, and our failure to do so shall relieve you of any responsibility or liability arising out of our not receiving such monthly statement.

7.  REPRESENTATIONS AND WARRANTIES:  We hereby represent and warrant to you and to the Re-Factor that: (i) each Receivable is a bona fide existing obligation created by a customer's express order for, and the actual sale and physical delivery of, or legal passage of title to, goods or the rendering of services to customers in the ordinary course of business, which goods, prior to sale, we owned free and clear of any liens or encumbrances, and which Receivable is then unconditionally owing to us without dispute, defense, offset, or counterclaim; (ii) the customers, which are not affiliated with us, have received and have accepted the goods or services, and the invoices therefor, without dispute, offset, or claim of any kind as to price, terms, quality, quantity, delay in shipment, offsets, counterclaims, contra accounts or any other defense of any other kind and character; (iii) the Receivables will not be subject to discounts, deductions, allowances, offsets, counterclaims or other contra items, nor to any other special terms of payment that are not shown on the face of the invoice thereof; (iv) the Receivables will not represent delivery of merchandise upon "consignment," "guaranteed sale," "sale or return," "payment on reorder," or similar terms; and (v) the Receivables will not represent "pack, bill and hold" transactions unless we have furnished you with a copy of our customer's purchase order soon after its receipt, and you have obtained

such customer's agreement to grant you a security interest in the merchandise and pay for such merchandise at maturity of our invoice irrespective of whether or not we have received instructions to deliver the same; (vi) we are solvent; (vii) we have full right and authority to sell or assign to you, and to grant to you a security interest in, our Receivables; (viii) we have not granted and will not hereafter grant to any other person a security interest in, or grant to any other person any right to purchase, our Receivables, or, without your prior written consent, grant to any other person a security interest in any of our inventory at any time during the term of this Agreement and until all security interests or purchases granted hereunder have been terminated; (ix) we have paid all taxes which have become due and payable and there are no judgments, assessments, or liens filed against us or any of our property, real or personal.

8. SECURITY: As collateral security for any and all of our (and our parent's subsidiaries' and affiliates') indebtedness and obligations to you (and to your parent, subsidiaries and affiliates), whether matured or unmatured, absolute or contingent, now existing or hereafter arising (including under indemnity or reimbursement agreements or by subrogation), and however acquired by you, whether arising directly between us or acquired by you by assignment, whether relating to this Agreement or independent hereof, including all obligations incurred by us to any other person factored or financed by you (collectively, the "Obligations"), we do hereby grant to you a security interest in all of our accounts, contract rights, computer software, programs, stored data, aging schedules, customer lists, and general intangibles (including all patents, trademarks, and copyrights registered in the United States Copyright or Patent offices, together with the goodwill of the business in connection with which such trademark may be used and the royalties and other fees which become due for the use of such patents, trademarks, or copyrights), whether or not otherwise specifically assigned to you in this Agreement, now existing or hereafter acquired, and in the proceeds and products thereof, any security and guarantees therefor, in the goods and property represented thereby, in all of our books and records relating to the foregoing, and in all reserves, credit balances, sums of money at any time to our credit with you, and any of our property at any time in your possession. We hereby irrevocably authorize and direct you to charge at any time to our account any Obligations, and to pay any Obligations owing by us to your parent, subsidiaries or affiliates, by so charging our account. We agree to execute financing statements and any and all other instruments and documents that may now or hereafter be provided for by the Uniform Commercial Code or other law applicable thereto reflecting security interests granted to you hereunder. We hereby appoint you as our attorney-in-fact and authorize you to sign such financing statements on our behalf as debtor or to file such financing statements without our signature, signed only by you as secured party. We shall be liable for, and you may charge our account with, all reasonable costs and expenses of filing such financing statements (including any filing or recording taxes), making lien searches, and any attorney's fees and expenses that may be incurred by you in perfecting, protecting, preserving, or enforcing your security interests and rights hereunder.

9. TERM: This Agreement shall continue in full force and effect for a period of 1 year from the date hereof and shall be deemed renewed from year to year thereafter unless we give you notice in writing, by registered or certified mail, not less than thirty (30) and not more than sixty (60) days prior to the expiration of the original term of this Agreement (or any renewal term thereof), of our intention to terminate this Agreement as of the end of such term. You may terminate this Agreement at any time upon thirty (30) days' prior written notice to us. Notwithstanding the foregoing, if we become insolvent or unable to meet our debts as they mature, fail, close, suspend, or go out of business, commit an act of bankruptcy, file or become the subject of a petition under the Bankruptcy Act or law permitting the appointment of a receiver, liquidator, conservator, or similar functionary, breach or become in default under this Agreement or any other agreement with you (or your parent, subsidiaries or affiliates), or any Obligation to you, or if there is a change (by death or otherwise) in our principal stockholders or owners, then, notwithstanding the foregoing, you shall have the right to terminate this Agreement at any time without notice. In the event you elect to terminate this Agreement, and your decision to do so is a result of a breach of this Agreement by us, then, notwithstanding any other provisions contained herein, you shall be entitled to charge our account, and we agree to pay to you, the monthly minimum factoring fee specified in paragraph 5(c) herein for the later of ninety (90) days from the effective date of termination or until any and all of our indebtedness to you

pursuant to this Agreement shall have been paid in full. Your rights and our Obligations arising out of transactions having their inception prior to the termination date shall not be affected by any termination or notice thereof. Termination of this Agreement shall not terminate, extinguish, or remove any liens or security interests granted to you hereunder until we have fully paid and discharged any and all of our Obligations to you, and we shall continue to furnish to you confirmatory assignments and schedules of Receivables previously assigned to you and all proceeds in respect thereof. After the giving of any notice of termination hereunder, and until the full liquidation of our account, we shall not be entitled to receive any payments from you. From and after the effective date of termination, all amounts charged or chargeable to our account hereunder, and all our Obligations to you, shall become immediately due and payable without further notice or demand.

## 10. RE-FACTOR:

You have advised us that you, from time to time, may reassign and re-sell the Receivables to (i) Capital Business Credit, LLC. (ii) another factor or (iii) such other business entity (collectively and severally referred to herein as the "Re-Factor") as you in your sole and absolute discretion may determine, pursuant to the terms and provisions of agreements (the Reassignment Agreements") entered into with such Re-Factor, from time to time. We acknowledge and agree that you reserve the right to resell and reassign to such Re-Factor any Receivables purchased hereunder or to otherwise hypothecate to such Re-Factor any lien or security interest you may hold by virtue of this Agreement including, but without limitation, with respect to the Receivables, and we hereby consent to any such resale, reassignment and hypothecation.

We further agree as follows:

a) We shall have no rights under the Reassignment Agreements, we will not look to or seek to hold the Re-Factor responsible for any of your obligations under this Agreement, and that your relationship with the Re-Factor is completely separate and apart from our relationship with you except as to any lien rights and the granting and enforcing of any security interest that the Re-Factor may have by reason of its purchase of our Receivables pursuant to the Reassignment Agreement.

b) We will have no rights against the Re-Factor for any actions that it takes or fails to take under the Reassignment Agreement.

c) We shall issue all of our invoices with a legend indicating that the invoice has been purchased by the Re-Factor. We shall take such additional actions in furtherance of the rights of the Re-Factor and you as you or the Re-Factor may require.

d) Upon yours or the Re-Factor's request we shall immediately provide to the Re-Factor any and all information which the Re-Factor may require regarding our financial condition, any Receivables, any Obligations, the collateral for our Obligations and any other information which the Re-Factor may request.

e) We consent to your sharing with the Re-Factor copies of all financial statements delivered to you under this Agreement. In this connection, we shall, promptly follow the date hereof, deliver a letter ("Accountant Letter") to our accountants which shall (I) advise them that one of the principal purposes of the financial statements which the accountants may be asked to prepare is to provide you and the Re-Factor with information regarding our financial condition, (ii) directing the accountants to send such financial statements directly to you and the Re-Factor, and (iii) upon your request, to meet with us and the Re-Factor annually or more frequently, if requested by you or the Re-Factor, to discuss said financial statements and any questions regarding the same. If, hereafter, we change accountants, the new accountants shall be independent certified public accountants acceptable to you, and we shall deliver the

Accountant Letter of such new accountants. All costs, expenses and fees pertaining to the matters referred to in this subsection shall be borne solely and exclusively by us.

We further agree that in addition to the convenants, agreements and obligations on our part to be performed that are contained in this Agreement, we covenant and agree that we will not do any act or omit to do any act which will result in any violation of the terms and provisions of the Reassignment Agreements on your part and that any credit approval you have issued shall be automatically terminated without any further liability on your part if an act or omission by us prevents you from complying with the terms of the Reassignment Agreement relating to such credit approval.

We hereby indemnify, defend and save you harmless from and against any and all liability, claims, suits, demands, damages, judgments, interest and expenses (including, but not limited to counsel fees and disbursements) to which you may be subject or suffer by reason of any liability or claim arising or resulting from our acts or omission to do any act which results in a violation of the terms and provisions of the Reassignment Agreement on your part.

11. MISCELLANEOUS:

(a) Any goods rejected or returned by any customer shall be your property held by us in trust for you separate and apart from any other goods, and, upon your demand and in accordance with your instructions, shall forthwith be delivered to you or disposed of by us without charge to you, with the proceeds of such disposition to be remitted promptly to you. We shall promptly report to you, in writing, all disputes and claims made by our customers, the refusal of any services, and the rejection or return of or offer to return any goods, and we will promptly and diligently prosecute, defend or settle all such claims and disputes at our expense. WE AGREE TO PREPARE AND ASSIGN TO YOU ALL CREDIT MEMOS TO WHICH OUR CUSTOMERS HAVE BECOME ENTITLED SINCE THE DATE OF OUR LAST ASSIGNMENT, and our failure to do so entitles you to charge our account with any expenses incurred by you as a result. As absolute owner of each Receivable, you and/or the Re-Factor may, in your sole discretion, enforce, effect any compromise regarding settlement, or adjust any Receivable, in your name or ours, without affecting or limiting our obligations to you under this Agreement, whether or not any such Receivable shall have been charged back to us. You reserve the right at any time to charge back to our account the full amount of the Receivable(s) involved in any claim, dispute, rejection, or return asserted or made by our customers, and we agree to pay you upon demand the full amount thereof. The chargeback to our account of the amount of any such Receivable shall not be deemed a reassignment to us, and title thereto and to the proceeds thereof, all security and guarantees therefor, and our interest in the goods represented thereby shall remain in you. We shall indemnify you for, and hold you harmless against, any loss, liability, claim or expense of any kind arising from any claims of, or disputes with, our customers as to terms, price, quality, quantity, or otherwise, relating to any Receivable, including any claim for return or reimbursement of any payments therefor. We agree to notify you promptly when a customer asserts a dispute or claim of any kind, and upon your notice to us of a customer dispute or claim, we agree to contact the customer promptly to effect a resolution of such dispute or claim.

(b) If any check, draft, note, acceptance, cash collection or payment in any form is received by us on any Receivable, WE SHALL IMMEDIATELY TRANSMIT AND DELIVER IT TO YOU AND/OR THE RE-FACTOR IN THE FORM RECEIVED, and our failure to do so entitles you to charge our account with any expenses incurred by you as a result. Until our delivery of each such payment to you, it shall be held by us in trust for you. We agree that you and/or the Re-Factor, and any such person or entity as you and/or the Re-Factor may from time to time designate, shall have the right to sign and/or endorse our name on all remittances and all papers, bills of lading, receipts, instruments and documents relating to the Receivables and the transactions between us. You and/or the Re-Factor shall have the right to deposit any checks or other remittances received on Receivables regardless of notations or conditions placed thereon by our customers or deductions reflected thereby and to charge the amount of any such deduction to our account.

(c)  In the event a sales or excise tax is levied by State or Federal authorities, in such form that you or the Re-Factor are required to pay a tax on sales represented by any Receivable(s), we agree to reimburse you for the full amount of taxes payable and agree that all such amounts may be charged to our account.

(d).  We agree to keep proper books of record and accounts in accordance with sound and accepted accounting practices, which books shall at all times be open to inspection by you.  You and such accountant or other agents as you may from time to time designate shall have the right, at our expense, to visit and inspect our properties, assets and books, and to discuss our affairs, finances and accounts with our officers and employees at such reasonable times as you may designate, and to make and take away copies of our records.  We agree to do all things necessary or appropriate to permit you to fully exercise your rights under this Paragraph.  We also agree to make available to you from time to time, upon your request, copies of financial statements prepared by an accountant acceptable to you.  Unless specifically waived in writing, such financial statements are to be provided to you on a quarterly basis.

(e)  Your failure at any time to insist upon performance of any term or provision of this Agreement shall not be deemed a waiver of any right reserved to you, and the waiver of one provision shall not be deemed to be a waiver of any other provision.

(f)  This Agreement is our complete and final agreement, reflects our mutual understanding, supersedes any prior agreement or understanding between us, and may not be modified or amended orally. We acknowledge that, but for the promises and representations expressly contained in this Agreement, no other promise or representation of any kind has been made to us to induce us to execute this Agreement. Furthermore, we acknowledge that if any such promise or representation has been made, we have not relied upon it in deciding to enter into this Agreement.

(g)  This Agreement is deemed made in the State of New York and shall be governed, interpreted, and construed in accordance with the laws of the State of New York.  No modification, amendment, waiver, or discharge of this Agreement shall be binding upon you unless in writing and signed by you. TRIAL BY JURY IS HEREBY WAIVED by us in any action, proceeding or counterclaim brought by either of us against the other on any matters whatsoever arising out of or in any way connected with this Agreement, or the relations created hereby, whether for contract, tort, or otherwise, and we hereby consent to the jurisdiction of the courts of the State of New York and of any Federal Court in such state for determination of any dispute as to any such matters.  In connection therewith, we hereby waive personal service of any summons, complaint, or other process, and agree that service thereof may be made by registered or certified mail directed to us at our address set forth above or such other address of which we shall have previously notified you by registered or certified mail. In the event that you obtain counsel for the purpose of collecting any indebtedness due you from us or seeking to enforce any right you are entitled to under the factoring agreement, we agree to pay the reasonable attorneys' fees and expenses (including all such fees incurred at trial and the appellate levels) of your counsel.  In addition, in the event you are sued by us or any other party for any claim or cause of action related to or arising under this Agreement or the factoring relationship, or you are required to defend any suit regarding any duty you are alleged to have breached, whether in the form of a contract duty, tort or otherwise, we agree that if you prevail at trial or on appeal we shall be obligated to reimburse you for all of the reasonable attorneys' fees you incur.  We also agree that you may charge and/or set off against our account all such fees and expenses as such fees or expenses are incurred.  Your books and records shall be admissible as prima facie evidence of the status of the accounts between us.  This Agreement shall be binding upon and inure to the benefit of each of us and our respective heirs, executors, administrators, successors and assigns, but we may not assign this Agreement or any of our rights hereunder to any person without your prior written consent.

(h)  We agree and acknowledge that you and your authorized representatives are engaged in the provision of factoring services pursuant to this Agreement.  By entering into this Agreement, we expressly acknowledge that we will not seek advice or counsel from you or any of your representatives with respect to the management and/or operation of our business, or any other entity affiliated or controlled by us, and if we deem such advice or counsel to have been offered, directly or indirectly, we will evaluate it and act or decline to act upon it based upon our own careful analysis and/or the advice or counsel of our

Initials [M]  Initials ____
Created on 10/29/07

9

# SECRETARY'S
# CERTIFICATE

The undersigned, Secretary of Stevano Wear Inc., a corporation duly organized and validly existing under the laws of the State of New York DOES HEREBY CERTIFY that the following is a true copy of certain resolutions duly and unanimously adopted at a meeting of the Board of Directors of said corporation, duly called and held on _____ 2007 at which a quorum was present ant voting throughout, and which are not in conflict with the Certificate of Incorporation, By-Laws, rules and regulations of said corporation, and which resolutions have not been modified or rescinded and are still in full force and effect:

"Whereas, this corporation proposes to enter into a factoring agreement with Geneva Factors Ltd. ( Geneva ) pursuant to which this corporation will sell and assign to Geneva all of its receivables ( as defined therein ), and will grant to Geneva a security interest in all of its accounts, contract rights, instruments, documents, chattel paper and general intangibles of this corporation ( collectively, the "collateral" ), and the form of such factoring agreement having been submitted to and duly considered at this meeting, and the execution and delivery thereof having been deemed to be in the best interest of this corporation"; now, therefore, be it:

"Resolved, that any one or more of the officers of this corporation be, and they each hereby are, authorized, directed and empowered, in the name and on behalf of this corporation: to enter into, execute and deliver to Geneva a factoring agreement substantially in the form submitted to this meeting, with such changes as said officer or officers may consider appropriate, the execution and delivery thereof by any one of such officers being deemed conclusive evidence of this corporation's approval of the terms thereof; from time to time, to sell and assign to Geneva the receivables, and to borrow money and obtain advances and other financial accommodations from Geneva, in such amounts and upon such terms and conditions as said officer or officers may consider appropriate, and to grant a security interest in the collateral, now existing or hereafter arising, pursuant to the terms or said factoring agreement, or otherwise; to execute and deliver one or more promissory notes of other evidences of indebtedness, financing statements, supplementary agreements, assignments, schedules, transfers, notices, contracts, subordination agreements, guarantees, designations, consignments and other instruments and documents in connection with the factoring agreement, as amended or supplemented from time to time ( including the grant of additional liens and security interests in such personal property and/or real property of this corporation as may be requested by Geneva pursuant to any such supplement ), containing and upon such terms as said officer or officers may consider appropriate, the execution and delivery thereof being deemed conclusive evidence of this corporation's approval of the terms thereof, to adopt a facsimile printed or rubber stamp signature for the purpose of expediting the terms of the factoring agreement; and to execute and deliver such further documents and to perform such other acts as may be necessary or desirable to effectuate the foregoing resolution; and all such action of said officer or officers shall be taken as the action of , and is hereby authorized, ratified, approved and confirmed by, this corporation and the board of directors thereof" and is further

"Resolved, that until Geneva receives notice in writing by registered mail of any changes or limitations of authority of any officers of this corporation, it is authorized to rely upon the authority and power set forth in these resolutions".

own independent expert(s) or consultant(s). WE AGREE THAT WE WILL NOT SEEK OR ATTEMPT TO ESTABLISH A FIDUCIARY RELATIONSHIP BETWEEN YOU AND/OR YOUR REPRESENTATIVES AND OURSELVES, OR ANY OTHER ENTITY AFFILIATED OR CONTROLLED BY US. WE HEREBY EXPRESSLY WAIVE ANY RIGHT TO ASSERT, NOW OR IN THE FUTURE, THAT THERE WAS OR IS A FIDUCIARY RELATIONSHIP BETWEEN US IN ANY ACTION, PROCEEDING OR CLAIM FOR DAMAGES.

Stevano Wear Inc.

By: _____

The foregoing is acknowledged, accepted and agreed to:

GENEVA FACTORS LTD.

By: _____

STEVANO WEAR INC.
599 MAIN AVE.
PASSAIC, NJ 07055

The undersigned **DOES FURTHER CERTIFY** that the Certificate of Incorporation and By-Laws of this corporation contain no requirement for shareholder approval or consent to the execution for the factoring agreement or the consummation of any of the transactions referred to in the foregoing resolutions.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of the corporation this _29_ day of _oct_, 2007

_____   Secretary

Corporate Seal

STEVANO WEAR INC.
599 MAIN AVE.
PASSAIC, NJ 07055

2

# EXHIBIT B

# STEVANO WEAR CO.

**599 Main Ave**
**Passaic, NJ 07055**
**Tel:973-594-0200**
**fax:973-594-4600**

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/30/2007 | 13625 |

| Bill To |
|---------|
| REAL DESIGN BARAGAIN<br>SECACUCUS<br>NJ |

| Ship To |
|---------|
| REAL DESIGN BARAGAIN ( Mall )<br>SECACUCUS<br>NJ |

| P.O. Number | Terms | QTY / BOXES | Rep | Ship | Via | Due Date | B.O.L # |
|-------------|-------|-------------|-----|------|-----|----------|---------|
| | Net 30 | 167 | SAMY | 11/30/2007 | | | |

| Quantity/DOZ | Item Code | Description | Price / DOZ | Amount |
|--------------|-----------|-------------|-------------|--------|
| 21 | 2149Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( ANGEL CUTIE ) | 42.00 | 882.00 |
| 21 | 2567 | JUNIOR GORLS TANK TOP LONG | 36.00 | 756.00 |
| 21 | 1157L | L/S JUNIOR GIRLS TOP ( PUNNY ) | 45.00 | 945.00 |
| 21 | 1027/K.A | KIDS GIRLS HOODED PANT SET ( M.L NO ZIPPER ) | 55.00 | 1,155.00 |
| 21 | 1027M | JUNIOR GIRLS HOODED PANT SET ( MELTON - NO ZIPPER ) | 72.00 | 1,512.00 |
| 21 | 1317 | S/S JUNIOR GIRLS TOP | 39.00 | 819.00 |
| 21 | 1117L | L/S HOODED GIRLS TOP ( SMALL SKULL ) | 45.00 | 945.00 |
| 21 | 3002/V/BE | JUNIOR GIRLS HOODED PANT SET ( VELOUR ) | 132.00 | 2,772.00 |
| 21 | 2357S1 | JUNIOR GIRLS TOP ( FLOWERS STONES ) | 39.00 | 819.00 |
| 21 | 31570Q2 | 3/4 SLEEVE JUNIOR GIRLS TOP ( BABY GIRLS ) | 36.00 | 756.00 |
| 21 | 906LA | L/S JUNIOR GIRLS TOP COTTON ( BUNNY ) | 45.00 | 945.00 |
| 18 | 5148/2 | LADIES HOODED PANT SET ( LYCRA ) | 84.00 | 1,512.00 |
| 18 | 30000/2 | JUNIOR GIRLS HOODED PANT SET ( M.L PLAIN-ZIPPER ) | 72.00 | 1,296.00 |
| 18 | 3001/2 | JUNIOR GIRLS PANT SET ( M.L ADIDAS -ZIPPER ) | 72.00 | 1,296.00 |
| 18 | 31624L | L/S JUNIOR GIRLS TOP ( DIVA ) | 45.00 | 810.00 |

This bill and all future bills are assigned to, owned by
and payable to:

**GENEVA FACTORS LTD.**
**P.O. BOX  20092**
**NEW YORK, NY 10017**

To whom prompt notice must be given of any
merchandise returns and any claims or disputes
whether based on shortages, non-delivery, offsets,
or any other claim.

| Total | $17,220.00 |
|-------|------------|



# GENEVA FACTORS LTD.

## Schedule of Assigned Accounts

| Client No. | Schedule No. | Date |
|---|---|---|
| 7005 | | |

**Assignor Company**  Stevans Wear Co

**Address**  599 Main Ave

**City, State, Zip Code**  Passaic, NJ 07055

**To Geneva Factors Ltd., we deliver to you the following:**

invoices numbered consecutively from  13625  through  13625

except numbers

credit memos numbered consecutively from  through

except numbers

invoices and credit memos intermixed numbered consecutively from

through  except numbers

covering credit sales generated by us all of which accounts are hereby sold, assigned, transferred and confirmed to you in accordance with the provisions printed on the reverse side hereof, with the same force and effect as though said provisions were fully set out herein. For details as to names and addresses of each debtor, the articles of merchandise sold, the sale price thereof and terms of sale, the unpaid balance owing by each debtor therefor and other particulars, reference is hereby made to the duplicate invoices and credit memos delivered to you, and to the books of account, statements or other records kept by us at the above address, all with the same force and effect as though the same were herein fully set out. With reference to all accounts assigned on the within schedule, assignor hereby certifies that the original invoices billed in prescribed form with notification that the account is owned by and payable only to Geneva Factors Ltd., have to-day been properly posted by First Class Mail addressed to the respective accounts and that the merchandise covered thereby has been shipped to them.

Total Amount of Invoices  $  $17220.00  IV

Less: Total Amount of Credit Memos  $  CM

Net Amount of Assignment Schedule  $

**Important:** Please attach, to original copy of this schedule, adding machine tape showing separately the totals of invoices and credit memos.

Assignor Company Name  Stevans Wear

Authorized Signature  Stevans Wear

Signator Title  STEVANO Wear

| Name of Carrier: *Stevens wear Truck* | | | Carrier's No. | Date *11/30/07* | Shipper No. | |
|---|---|---|---|---|---|---|

To Consignee: *Jaclyn's Designer Bargains Inc.*

FROM Shipper: *Stevens Wear Co.*

Street *210 Meadowlands Parkway*

*599 Main Ave*

Destination *Secaucus*    Zip Code *NJ 07094*

*Passaic NJ 07055*

Emergency Response Phone No. *201-617-0101*

Route:

Vehicle No.

| No. Shipping Units | HM | Kind of Package. Description of Articles, Special Marks and Exceptions | *Weight (Sub. to Cor.) | RATE | ✓ | CHARGES |
|---|---|---|---|---|---|---|
| *167* | | *Clothing* | *2505#* | | | |
| *cartons* | | | | | | |

REMIT TO:
ADDRESS

C.O.D.
AMT:

C.O.D. FEE:
PREPAID ☐ $
COLLECT ☐ $

TOTAL CHARGES: $

FREIGHT CHARGES
Check Appropriate Box:

✓ Freight prepaid ☐ Collect

Shipper, Per

Agent, Per *B Smith  11/30/07*

*Received 167 cases*

*Smith*
*11/30/07*

+ Mark with "X" to designate Hazardous Material as defined in Title 49 of Federal Regulations. For further details on TRANSPORTING HAZARDOUS MATERIALS see Federal Regulations 49 CFR, Part 172.

# EXHIBIT C

DATE  02/12/08                          Geneva Factors, Ltd.

NOTICE OF CHARGE/ CREDIT BACK

CLIENT:7005 STEVANO WEAR / GENEVA
CUSTOMER: RORO INC.
11802 FARSIDE RD SUITE B
ELLICOTT CITY MD 21042

PREPARED BY: MAGDALENA SNOW
PHONE: 212-935-6156
FAX: 212-755-3208
EMAIL: msnow@genevafactorsltd.com


The below listed items have been Charged/ Credited back to you reserve
For the following reason:

Customer claims goods were returned to the vendor.

| Inv# | Invoice Date | Due Date | Amount | Terms |
|------|-------------|----------|--------|-------|
| 13510 | 10/30/07 | 11/30/07 | 45,360.00 | Net 30 |

# STEVANO WEAR CO. <span style="float:right">Invoice</span>

**599 Main Ave**
**Passaic, NJ 07055**
**Tel:973-594-0200**
**fax:973-594-4600**

| Date | Invoice # |
|------|-----------|
| 10/30/2007 | 13510 |

| Bill To |
|---------|
| RORO INC .
11802 FARSIDE RD SUITE B
ELLICOTT CITY ,
MD 21042 |

| Ship To |
|---------|
| 35 different Stores
Statment is enclosed |

| P.O. Number | Terms | QTY / BOXES | Rep | Ship | Via | Due Date | B.O.L # |
|-------------|-------|-------------|-----|------|-----|----------|---------|
| 952 | Net 30 | 630 | SAMY | 10/30/2007 | OLD DIAMN... | 11/30/2007 | |

| Quantity/DOZ | Item Code | Description | Price / DOZ | Amount |
|--------------|-----------|-------------|-------------|--------|
| 210 | 30000/2 | JUNIOR GIRLS HOODED PANT SET ( M.L PLAIN-ZIPPER ) | 72.00 | 15,120.00 |
| 210 | 1027M | JUNIOR GIRLS HOODED PANT SET ( MELTON - NO ZIPPER ) | 72.00 | 15,120.00 |
| 210 | 3001/2 | JUNIOR GIRLS PANT SET ( M.L ADIDAS -ZIPPER) | 72.00 | 15,120.00 |

This bill and all future bills are assigned to, owned by

and payable to:

**Geneva Factors LTD**

**P.O. BOX 20092**

**NEW YORK, NY10017**

To whom prompt notice must be given of any

merchandise returns and any claims or disputes

whether based on shortages, non-delivery, offsets,

or any other claim.

| | **Total** | **$45,360.00** |
|--|-----------|----------------|



# GENEVA FACTORS LTD.

## Schedule of Assigned Accounts

| Client No. | Schedule No. | Date |
|---|---|---|
| | 002 | |

Assignor Company **Stefans Wear Co**

Address **599 Main Ave**

City, State, Zip Code **Passaic    NJ 07055**

To Geneva Factors Ltd., we deliver to you the following:

invoices numbered consecutively from **13510** through **13510**

except numbers

credit memos numbered consecutively from _____ through

except numbers

invoices and credit memos intermixed numbered consecutively from

through _____ except numbers

covering credit sales generated by us all of which accounts are hereby sold, assigned, transferred and confirmed to you in accordance with the provisions printed on the reverse side hereof, with the same force and effect as though said provisions were fully set out herein. For details as to names and addresses of each debtor, the articles of merchandise sold, the sale price thereof and terms of sale, the unpaid balance owing by each debtor therefor and other particulars, reference is hereby made to the duplicate invoices and credit memos delivered to you, and to the books of account, statements or other records kept by us at the above address, all with the same force and effect as though the same were herein fully set out. With reference to all accounts assigned on the within schedule, assignor hereby certifies that the original invoices billed in prescribed form with notification that the account is owned by and payable only to Geneva Factors Ltd., have to-day been properly posted by First Class Mail addressed to the respective accounts and that the merchandise covered thereby has been shipped to them.

Total Amount of Invoices    $ **45360.00** IV

Less: Total Amount of Credit Memos    $ _____ CM

Net Amount of Assignment Schedule    $ _____

Important: Please attach, to original copy of this schedule, adding machine tape showing separately the totals of invoices and credit memos.

Assignor Company Name    **Stefans Wear**

Authorized Signature    **Stefans Wear**

Signator Title    **Stefans Wear**

LEE AND HAWTHORNE

2125943053    P.001/001

coface (NORTH AMERICA) ®

*973-594-4600*

*Attn: Sami*
*From Geneva Factors*

**Lee & Hawthorne Agency**
**General Agents**
Kenneth C. Lee
Robert P. Hawthorne

Tel:     (212)560-0400
Fax:     (212)594-3050
Email:   Lee_Hawthorne@coface-
         usa.com

DATE:     August 28, 2007

To:     DIPI SINGH                    From:     KAREN FERRARA

Company: GENEVA FACTORS              Company: CNA CREDIT

Fax No:    212-755-3208              Fax No:    (646) 514-3637

Phone No:                            Phone No: (212)560-0408

SUBJECT TO THE TERMS ANS CONDITIONS OF YOUR CREDIT INSURANCE POLICY,
THE FOLLOWING COVERAGE (S) WERE APPROVED OR DECLINED BY C.N.A. INSURANCE
COMPANY AND IF APPROVED WITH AN EFFECTIVE DATE, A RIDER WILL BE ISSUED IN DUE
COURSE.

| DEBTOR | REQUESTED | APPROVED | EFFECTIVE DATE |
|---|---|---|---|
| RORO, INC. DBA TENNIS SHOE WAREHOUSE, THE POSITIVE DECISION | $40,000.00 | $40,000.00 | 11/01/2007 |

**Lee & Hawthorne Agency**  1350 Broadway, Suite 2001  New York, NY 10018



@rating

TOTAL P.001

STEVANO WEAR INC.
599 MAIN AVE.
PASSAIC. NJ 07055

**Customer Name : RORO INC .**

**Invoice #  13510        Ship Date : 11/05/2007**

| STORE # | QTY / BOXES |
|---------|-------------|
| 1 | 18 |
| 2 | 18 |
| 6 | 18 |
| 7 | 18 |
| 8 | 18 |
| 9 | 18 |
| 10 | 18 |
| 11 | 18 |
| 12 | 18 |
| 13 | 18 |
| 17 | 18 |
| *18* | *18* |
| 19 | 18 |
| 20 | 18 |
| 21 | 18 |
| 22 | 18 |
| 23 | 18 |
| 24 | 18 |
| 25 | 18 |
| 27 | 18 |
| 29 | 18 |
| 30 | 18 |
| 32 | 18 |
| 33 | 18 |
| 34 | 18 |
| 35 | 18 |
| 37 | 18 |
| 38 | 18 |
| 39 | 18 |
| 40 | 18 |
| 42 | 18 |
| 43 | 18 |
| 44 | 18 |
| 45 | 18 |
| 46 | 18 |
| Total | 630 |



# GENEVA FACTORS LTD.

## Schedule of Assigned Accounts

| Client No. | Schedule No. | Date |
|---|---|---|
| 7005 | 002 | |

**Assignor Company** Stevano Wear

**Address** 599 Main Ave

**City, State, Zip Code** Passaic, NJ 07055

**To Geneva Factors Ltd., we deliver to you the following:**

invoices numbered consecutively from 13510 through 13510

except numbers

credit memos numbered consecutively from through

except numbers

invoices and credit memos intermixed numbered consecutively from

through except numbers

covering credit sales generated by us all of which accounts are hereby sold, assigned, transferred and confirmed to you in accordance with the provisions printed on the reverse side hereof, with the same force and effect as though said provisions were fully set out herein. For details as to names and addresses of each debtor, the articles of merchandise sold, the sale price thereof and terms of sale, the unpaid balance owing by each debtor therefor and other particulars, reference is hereby made to the duplicate invoices and credit memos delivered to you, and to the books of account, statements or other records kept by us at the above address, all with the same force and effect as though the same were herein fully set out. With reference to all accounts assigned on the within schedule, assignor hereby certifies that the original invoices billed in prescribed form with notification that the account is owned by and payable only to Geneva Factors Ltd., have to-day been properly posted by First Class Mail addressed to the respective accounts and that the merchandise covered thereby has been shipped to them.

| | | |
|---|---|---|
| Total Amount of Invoices | $ | 45360.00 IV |
| Less: Total Amount of Credit Memos | $ | CM |
| | | |
| Net Amount of Assignment Schedule | $ | |

**Important:** Please attach, to original copy of this schedule, adding machine tape showing separately the totals of invoices and credit memos.

**Assignor Company Name** Stevano Wear

**Authorized Signature** Stevano Wear

**Signator Title** Stevano Wear

# EXHIBIT D

DATE  03/04/08                          Geneva Factors, Ltd.

NOTICE OF CHARGE/ CREDIT BACK

CLIENT:7005 STEVANO WEAR / GENEVA
CUSTOMER: BASHA
CALLE # 116 GEORGETTI
NARANJIHTO PR 00719

PREPARED BY: MAGDALENA SNOW
PHONE: 212-935-6156
FAX: 212-755-3208
EMAIL: msnow@genevafactorsltd.com

The below listed items have been Charged/ Credited back to you reserve
For the following reason:

Extended terms

| Inv# | Invoice Date | Due Date | Amount | Terms |
|------|--------------|----------|--------|-------|
| 13642 | 12/11/07 | 2/11/08 | 38,664.00 | Net 60 |

# STEVANO WEAR CO.

**Invoice**

599 Main Ave
Passaic, NJ 07055
Tel:973-594-0200
fax:973-594-4600

| Date | Invoice # |
|------|-----------|
| 12/11/2007 | 13642 |

| Bill To | Ship To |
|---------|---------|
| basha<br>calle #116 georgetti<br>naranjihto ,<br>PR  00719 | the same |

| P.O. Number | Terms | QTY / BOXES | Rep | Ship | Via | Due Date | B.O.L # |
|-------------|-------|-------------|-----|------|-----|----------|---------|
| | Net 60 | 144 | SAMY | 12/11/2007 | | 02/11/2008 | |

| Quantity/DOZ | Item Code | Description | Price / DOZ | Amount |
|--------------|-----------|-------------|-------------|--------|
| 36 | 1317/2 | JUNIOR GIRLS TANK TOP | 48.00 | 1,728.00 |
| 36 | 5449L | L/S HOODED JUNIOR TOP ( PLAIN W/ BUTTONS ) | 45.00 | 1,620.00 |
| 36 | 906LA | L/S JUNIOR GIRLS TOP COTTON ( BUNNY ) | 45.00 | 1,620.00 |
| 36 | 6220J | S/S JUNIOR GIRLS TOP | 42.00 | 1,512.00 |
| 36 | 1035L | S/S JUNIOR GIRLS TOP | 72.00 | 2,592.00 |
| 36 | 1038P | KIDS POLO SHIRT | 30.00 | 1,080.00 |
| 36 | 2149Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( ANGEL CUTIE ) | 42.00 | 1,512.00 |
| 36 | 1337L | L/S JUNIOR GIRLS TOP (SWEETY DOLL) | 48.00 | 1,728.00 |
| 36 | 1337Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( SKULL ) | 45.00 | 1,620.00 |
| 36 | 5107 | S/S JUNIOR GIRLS TOP ( SEXY ) | 42.00 | 1,512.00 |
| 36 | 31624L | L/S JUNIOR GIRLS TOP ( DIVA ) | 48.00 | 1,728.00 |
| 36 | 2357S1 | JUNIOR GIRLS TOP ( FLOWERS STONES ) | 42.00 | 1,512.00 |
| 36 | 2507S | S/S JUNIOR GIRLS TOP ( SKULLS ) | 42.00 | 1,512.00 |
| 36 | 701 | JUNIOR GIRLS TANK TOP ( MOTORCYCLE + FLOWERS ) | 42.00 | 1,512.00 |
| 36 | 703 | JUNIOR GIRLS TANK TOP( MOTORCYCLE) | 42.00 | 1,512.00 |
| 36 | 7614 | JUNIOR GIRLS PANT | 42.00 | 1,512.00 |
| 36 | 210 | JUNIOR GIRLS SET | 48.00 | 1,728.00 |
| 36 | 1157L | L/S JUNIOR GIRLS TOP ( PUNNY ) | 45.00 | 1,620.00 |
| 36 | 2347Q | 3/4 SLEEVE JUNIOR TOP(SWEETGIRLS CATS ) | 45.00 | 1,620.00 |
| 36 | 4625L | L/S JUNIOR GIRLS TOP ( SEXY GIRL BUNNY ) | 48.00 | 1,728.00 |
| 36 | 1117L | L/S HOODED GIRLS TOP ( SMALL SKULL) | 48.00 | 1,728.00 |
| 36 | 1311/L | LYCRA TANK TOP | 42.00 | 1,512.00 |
| 36 | 48470 | JUNIOR GIRLS TANK TOP ( ARMY ) | 42.00 | 1,512.00 |
| 36 | 4000 | JUNIOR GIRLS TOP | 39.00 | 1,404.00 |

This bill and all future bills are assigned to, owned by
and payable to:

**GENEVA FACTORS LTD.**
**P.O. BOX  20092**
**NEW YORK, NY 10017**

To whom prompt notice must be given of any
merchandise returns and any claims or disputes
whether based on shortages, non-delivery, offsets,
or any other claim.

| Total | $38,664.00 |
|-------|------------|



# GENEVA FACTORS LTD.

## Schedule of Assigned Accounts

| Client No. | Schedule No. | Date |
|---|---|---|
| 7005 | | 12/12/2007 |

Assignor Company  _Stevans Wear Co._

Address  _599 Main Ave_

City, State, Zip Code  _Passaic / NJ 07055_

**To Geneva Factors Ltd., we deliver to you the following:**

invoices numbered consecutively from  _13643 X_   through  _13642_

except numbers

credit memos numbered consecutively from                        through

except numbers

invoices and credit memos intermixed numbered consecutively from

through                     except numbers

covering credit sales generated by us all of which accounts are hereby sold, assigned, transferred and confirmed to you in accordance with the provisions printed on the reverse side hereof, with the same force and effect as though said provisions were fully set out herein. For details as to names and addresses of each debtor, the articles of merchandise sold, the sale price thereof and terms of sale, the unpaid balance owing by each debtor therefor and other particulars, reference is hereby made to the duplicate invoices and credit memos delivered to you, and to the books of account, statements or other records kept by us at the above address, all with the same force and effect as though the same were herein fully set out. With reference to all accounts assigned on the within schedule, assignor hereby certifies that the original invoices billed in prescribed form with notification that the account is owned by and payable only to Geneva Factors Ltd., have to-day been properly posted by First Class Mail addressed to the respective accounts and that the merchandise covered thereby has been shipped to them.

| | | |
|---|---|---|
| Total Amount of Invoices | $ | 38664.00   10476.00 IV |
| Less: Total Amount of Credit Memos | $ | 49140.00 CM |

| | | |
|---|---|---|
| Net Amount of Assignment Schedule | $ | |

**Important:** Please attach, to original copy of this schedule, adding machine tape showing separately the totals of invoices and credit memos.

Assignor Company Name  _Stevans Wear_

Authorized Signature  _Stevans Wear_

Signator Title  _STEVANO WEAR_

Company details

coface (NORTH AMERICA)®    **cofanet**

## Company details

Contract : 921077533001 - CIN - GENEVA FACTORS LTD

| HUSSEIN MOHAMMAD BASHA | CALLE GEORGETTI 116 |
|---|---|
| | 00719 |
| Tel: 787 869-9788 | NARANJITO |
| Fax: | USA Pos.America |
| | Puerto Rico |

| Identifier | 191800007 |
|---|---|
| Our reference number | 942 006027 |
| Your real outstanding amount (portfolio analysis) | 0 USD |

Your client codes : ·

ok

---

## Coverage

**You have an agreed coverage on this company.**

The credit limit that has been delivered is confidential

Date of request: 12/10/07
Decision date: 12/10/07
Effective date: 12/10/07

| Amount requested: | | |
|---|---|---|
| Amount agreed | 38 000 USD | Payment terms |
| | | 38 000 USD    Per policy terms |

Underwriter Name : INFOLINE

- To increase or decrease coverage, click here
- To cancel this cover, click here
- To consult the history of cover on this company, click here

---

Back

Print

**BILL OF LADING**

Name of Carrier: MAGIC TRANSPORT CO.

Carrier's No. _____    Date 12/12/07    Shipper No. _____

To Consignee: Basha

Street: Calle #116 Georgetti

Destination: Naranjinto    Zip Code PR 00719

Route: _____

FROM Shipper: Stevano Wear Co.
599 Main Ave
Passaic, NJ 07055

Emergency Response Phone No. _____

Vehicle No. _____

| No. Shipping Units | HM | Kind of Package, Description of Articles, Special Marks and Exceptions | *Weight (Sub. to Corr.) | RATE | ✓ | CHARGES |
|---|---|---|---|---|---|---|
| 144 | | Clothing | 2160 # | | | |
| 30x05 | | | | | | |

Signature of Consignor: MohaMMad B

+ Mark with "X" to designate Hazardous Material as defined in Title 49 of Federal Regulations.
For further details on TRANSPORTING HAZARDOUS MATERIALS see Federal Regulations 49 CFR, Part 172.

# EXHIBIT E

DATE  03/18/08                              Geneva Factors, Ltd.


NOTICE OF CHARGE/ CREDIT BACK

CLIENT:7005 STEVANO WEAR / GENEVA
CUSTOMER: TASSE'S FASHIONS
60 NW 12 AVE
MIAMI FL 33128


PREPARED BY: MAGDALENA SNOW
PHONE: 212-935-6156
FAX: 212-755-3208
EMAIL: msnow@genevafactorsltd.com


The below listed items have been Charged/ Credited back to you reserve
For the following reason:

customer claims goods were not received


| Inv# | Invoice Date | Due Date | Amount | Terms |
|------|-------------|----------|--------|-------|
| 13525 | 11/01/07 | 1/01/08 | 19,314.00 | Net 60 |

# TEVANO WEAR CO.

**599 Main Ave**
**Passaic, NJ 07055**
**Tel:973-594-0200**
**fax:973-594-4600**

# Invoice

| Date | Invoice # |
|---|---|
| 11/1/2007 | 13525 |

**Bill To**

TASSE'S FASHIONS
60 NW 12 AVE
MIAMI
FL 33128

**Ship To**

TASSE'S FASHIONS
60 NW 12 AVE
MIAMI
FL 33128

| P.O. Number | Terms | QTY / BOXES | Rep | Ship | Via | Due Date | B.O.L # |
|---|---|---|---|---|---|---|---|
| 650189/650190 | Net 60 | 147 | GEORG | 11/1/2007 | UCL | 01/01/2008 | 460086 |

| Quantity/DOZ | Item Code | Description | Price / DOZ | Amount |
|---|---|---|---|---|
| 30 | 1337Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( SKULL ) | 42.00 | 1,260.00 |
| 30 | 31625Q | 3/4 JUNIOR GIRLS TOP | 42.00 | 1,260.00 |
| 30 | 2347Q | 3/4 SLEEVE JUNIOR TOP(SWEETGIRLS CATS ) | 42.00 | 1,260.00 |
| 30 | 2149Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( ANGEL CUTIE ) | 42.00 | 1,260.00 |
| 30 | 31570Q2 | 3/4 SLEEVE JUNIOR GIRLS TOP ( BABY GIRLS ) | 42.00 | 1,260.00 |
| 30 | 31610Q | 3/4 SLEEVE JUNIOR GIRLS TOP | 42.00 | 1,260.00 |
| 30 | 31624L | L/S JUNIOR GIRLS TOP ( DIVA ) | 45.00 | 1,350.00 |
| 30 | 5182L | L/S JUNIOR GIRLS TOP ( BABY STAR CATS ) | 45.00 | 1,350.00 |
| 30 | 5107 | S/S JUNIOR GIRLS TOP ( SEXY ) | 36.00 | 1,080.00 |
| 30 | 2327 | S/S JUNIOR GIRLS TOP ( ORIGINAL SUPER STAR ) | 39.60 | 1,188.00 |
| 30 | 924V | S/S JUNIOR GIRLS TOP ( BIG BIRD ) | 38.40 | 1,152.00 |
| 30 | 900V | S/S JUNIOR GIRLS TOP ( SKULL ) | 38.40 | 1,152.00 |
| 30 | 48470 | JUNIOR GIRLS TANK TOP ( ARMY ) | 36.00 | 1,080.00 |
| 18 | 1457Q | 3/4 SLEEVE JUNIOR TOP ( SEXY GIRLS MOVIE STAR ) | 42.00 | 756.00 |
| 12 | 2357Q | 3/4 SLEEVE JUNIO9R GIRLS TOP ( TOP MODEL ) | 42.00 | 504.00 |
| 3 | 2437Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( DUCK ) | 42.00 | 126.00 |
| 18 | 116Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( SUPER SEXY ) | 42.00 | 756.00 |
| 30 | 2807Q | 3/4 SLEEVE JUNIOR GIRLS TOP ( ANGEL + FLOWERS ) | 42.00 | 1,260.00 |

This bill and all future bills are assigned to, owned by

and payable to

**Geneva Factors LTD**

**P.O. BOX 20092**

**NEW YORK, NY10017**

To whom prompt notice must be given of any

merchandise returns and any claims or disputes

whether based on shortages, non-delivery, offsets,

or any other claim.

| **Total** | **$19,314.00** |
|---|---|

 **GENEVA FACTORS LTD.**

## Schedule of Assigned Accounts

| Client No. | Schedule No. | Date |
|---|---|---|
| 7005 | 001 | 11/05/07 |

Assignor Company _Steviano Wear Co._

Address _599 Main Ave_

City, State, Zip Code _Passaic, NJ 07055_

**To Geneva Factors Ltd., we deliver to you the following:**

invoices numbered consecutively from _13525_ through _13525_

except numbers

credit memos numbered consecutively from                    through

except numbers

invoices and credit memos intermixed numbered consecutively from

through                    except numbers

covering credit sales generated by us all of which accounts are hereby sold, assigned, transferred and confirmed to you in accordance with the provisions printed on the reverse side hereof, with the same force and effect as though said provisions were fully set out herein. For details as to names and addresses of each debtor; the articles of merchandise sold, the sale price thereof and terms of sale, the unpaid balance owing by each debtor therefor and other particulars, reference is hereby made to the duplicate invoices and credit memos delivered to you, and to the books of account, statements or other records kept by us at the above address, all with the same force and effect as though the same were herein fully set out. With reference to all accounts assigned on the within schedule, assignor hereby certifies that the original invoices billed in prescribed form with notification that the account is owned by and payable only to Geneva Factors Ltd., have today been properly posted by First Class Mail addressed to the respective accounts and that the merchandise covered thereby has been shipped to them.

Total Amount of Invoices _19,314.00_ $                    IV

Less: Total Amount of Credit Memos              $                    CM

Net Amount of Assignment Schedule              $

**Important: Please attach, to original copy of this schedule, adding machine tape showing separately the totals of invoices and credit memos.**

Assignor Company Name _Steviano Wear_

Authorized Signature _Steviano Wear_

Signator Title _Steviano Wear_



# UNITED CARGO LOGISTICS INC.

22 Pennsylvania Ave. So. Kearny, NJ 07032
TEL: (973) 491-5620 • FAX: (973) 491-5623

Cargo Receipt # 460086

Date: 11/02/2007

CUSTOMER I.D. #

SHIPPER: Stevano Wear Co-
599 Main Ave
Passaic  NJ 07055

TEL: ( 973 - 594 - 0200

CUSTOMER I.D. #

CONSIGNEE: Tasse's Fashions
60 NW 12 Ave
Miami, FL 33128

ATTN:
TEL: 305 - 325 - 0570

| PIECES | WEIGHT | DESCRIPTION | FREIGHT CHARGE | | COD/DECLARED VALUE TERMS | | |
|--------|--------|-------------|----------------|---|---|---|---|
| | | | PREPAID | | Declared value does not constitute a request for collection of C.O.D. Also, request of C.O.D. does not constitute a request for declared value. Declared value and C.O.D. request must be marked in space provided. | C.O.D. | CASHIER'S CHECK |
| 147 | 1044# | Clothing | COLLECT | | C.O.D. amount and method of collection have to be marked clearly in order for UCL, Inc. to provide the service of collection on behalf of the shipper. (Refer to terms and conditions on the back of cargo receipt) Payment of in forms of Money Order, Travelers' Check, Certified Check and Cashier's Check will be accepted when C.O.D. is marked Cashier's Check. | | COMPANY CHECK |
| Cartons | | | Prepaid: If freight charge is marked prepaid but its not paid upon pick-up of your shipment, your shipment will be delivered collect. This may result in a delay of delivery. | | | Check only one and indicate amount below. Please print legibly. No indication will constitute an authorization to collect the funds in company checks. | |
| | | | DECLARED VALUE | | Failure to declare value will limit UCL, Inc's liability to 50 cents per pound up to $50 per shipment. Additional coverage may be purchased at 35 cents per $100 declared value. When the shipment is returned to shipper due to refusal by the consignee, shipper will pay round trip freight charges for returned boxes including but not limited to storage and attempt charges. Full terms and conditions are available at your request. | | |
| | | | $ 20,000.00 | | | $ | |

UCL, Inc. is not liable for damages on any fragile shipments. All fragile shipment is transported under shipper's consent of release of any and all liability toward UCL, Inc. and all its agents. All freights are subject to reweighed and dimensional weight charges. Any and all additional charge(s) accrued from these adjustments are guaranteed payment by the shipper.

| SHIPPER'S SIGNATURE | DATE PICKED UP | PIECES | CONDITIONS | DRIVER'S SIGNATURE |
|---------------------|----------------|--------|------------|--------------------|
| | 11/2/07 | 147 | | 161 |

Rev. August/20

**BY TENDERING FREIGHT TO UCL, INC. YOU AGREE TO ALL TERMS & CONDITIONS OF UCL, INC.**



Yahoo! | My Yahoo! | Mail

**YAHOO!** MAIL <sub>Classic</sub>    Welcome, stevanowear
[Sign Out, My Account]

Search
the Web    [Search]

Mail Home - Help

| **Mail** | Contacts | Calendar | Notepad |

Mail Upgrades - Options

[Check Mail]  [Compose]          [Search Mail]  [Search the Web]

Previous | Next | Back to Messages

[Delete]  [Reply ▾]  [Forward ▾]  [Spam]  [Move... ▾]

This message is not flagged. [ Flag Message - Mark as Unread ]          Printable View

**Subject:** FW: TASSE'S AMERICAN FASHIONS CORP

**Date:** Wed, 31 Oct 2007 14:26:52 -0400

**From:** "Dima Ghossaini" <DGhossaini@genevafactorsltd.com>    📧 Add to Address Book    📱 Add Mobile Alert

**To:** STEVANOWEAR@YAHOO.COM

Hello Sami.


Please see below Tasse's credit approval.


Regards,


Dima Ghossaini
Geneva Factors Ltd.
Tel: (212) 935-6156
Fax: (212) 755-3208
Web: www.genevafactorsltd.com



**From:** Laura Rampartap [mailto:laura_rampartap@coface-usa.com]
**Sent:** Wednesday, October 31, 2007 1:20 PM
**To:** Dima Ghossaini
**Cc:** Dipi Singh; 'Ray Ecke'
**Subject:** Geneva Factors -vs- TASSE'S AMERICAN FASHIONS CORP



Hi Dima,

Please read the comments below:

| DEBTOR DETAIL | | | |
|---|---|---|---|
| Dun's No.: 007110393 | Rating: 1R3 | | Year Started: 1994 |
| Debtor Name: **TASSE'S AMERICAN FASHIONS CORP** | | | |
| City: MIAMI | State: FL | Zip: 33128 | Country: UNITED STATES OF AMERICA |
| **COVERAGE DETAILS** | | | |

| Requested: $20,000.00 | Prior Coverage: $0.00 | Coverage Approved: $20,000.00 |
|---|---|---|
| Date Requested: 10/30/2007 | | |
| Effective Date: 11/01/2007 | | |
| | | |
| **Comments:** **POSITIVE DECISION** | | |

If you have any questions, please do not hesitate to contact us.

Regards,

**Laura Rampartap**
*Coface North America, Inc*
1350 Broadway - Suite 2001
New York , NY 10018
Tel: (212) 560-0408
Fax: (646) 514-3637
laura_rampartap@coface-usa.com
www.coface-usa.com

*About Coface*

Coface, rated AA+ by Fitch Ratings, AA by S&P and Aa3 by Moody's, is a subsidiary of Natixis whose share capital (Tier 1) was 11.2 billion euros end 2006 after application of CRD/Basel II norms. Coface's mission is to facilitate global business-to-business trade by offering its 105,000 clients four product lines to fully or partly outsource trade relationship management and to finance and protect their receivables: Credit Insurance, Company Information and Ratings, Receivables Management and Factoring. Coface also offers, in France , Management of Government Export Guarantees. Forty-five percent of the world's 500 largest corporate groups are customers of Coface due to the worldwide local service delivered by 6,000 staff members in 60 countries.

---

This e-mail has been scanned by MCI Managed Email Content Service, using Skeptic(tm) technology powered by MessageLabs. For more information on MCI's Managed Email Content Service, visit http://www.mci.com.

---



Previous | Next | Back to Messages
Save Message Text | Full Headers

Copyright © 1994-2007 Yahoo! Inc. All rights reserved. Terms of Service - Guidelines
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy

11/7

United Cargo Logistics, Inc – EWR
821 St. Georges Ave Woodbridge NJ 07095
Voice: 732-726-0300  Fax: 732-726-0838

## BILL OF LADING

**TESSES AMERICAN FASHION** *** 04074

60 N W 13TH AVE
MIAMI FL 33128
3053280670

**B/L #**     **1028161**
**Date**     11/2/2007

| CS# | PCS | Weight | D-Value | Shipper Name | SID# | Description |
|-----|-----|--------|---------|--------------|------|-------------|
| 0400036 | 147 | 3675 | $20,000.00 | STEVE NO WEAR CO | 00858 | |
| TOTAL | 147 | 3675 | | | | |

$324.11 Carrier check payable to United Cargo Logistics, Inc – EWR
(Includes Fuel Surcharge of $45.00 at 8.00%)

*** Failure to declare value will limit UCL, Inc's liability to 50 cents per pound up to $50.00 ***

Name (Print) _____    Date _____

Signature _____    Pieces received _____

Driver _____    Date _____